1  SEYFARTH SHAW LLP
   Daniel C. Whang (SBN 223451)
2  dwhang@seyfarth.com
   2029 Century Park East, Suite 3500
3  Los Angeles, California 90067-3021
   Telephone:  (310) 277-7200
4  Facsimile:  (310) 201-5219

5  SEYFARTH SHAW LLP
   Gerald L. Maatman, Jr. (*pro hac vice application to follow*)
6  gmaatman@seyfarth.com
   Jennifer A. Riley (*pro hac vice application to follow*)
7  jriley@seyfarth.com
   Michael D. Jacobsen (*pro hac vice application to follow*)
8  mjacobsen@seyfarth.com
   233 South Wacker Drive, Suite 8000
9  Chicago, Illinois 60606-6448
   Telephone:  (312) 460-5000
10 Facsimile:  (312) 460-7000

11 Attorneys for Defendant
   KELLY SERVICES, INC.

12

13                 **UNITED STATES DISTRICT COURT**

14                 **CENTRAL DISTRICT OF CALIFORNIA**

15

16

17 MAHOO AMIN, also known as SEYED M         Case No. ___8:18-cv-1528_____
   FAZLOLLAHZADE DIVKOLA, an
18 individual, on his own behalf and on behalf   **DEFENDANT KELLY SERVICES,**
   of all others similarly situated,             **INC.'S NOTICE OF REMOVAL OF**
19                                                **CIVIL ACTION TO THE UNITED**
                  Plaintiff,                      **STATES DISTRICT COURT**
20
             v.
21
   ADVANCED STERILIZATION
22 PRODUCTS SERVICES INC., a
   California corporation; KELLY
23 SERVICES, INC., a Michigan corporation;
   and DOES 1 through 25, inclusive,
24
                  Defendants.
25

26

27

28
   ──────────────────────────────────────────
                 DEFENDANT'S NOTICE OF REMOVAL

   48438097v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF, MAHOO AMIN, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Kelly Services, Inc. ("KSI") files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court for the County of Orange to the United States District Court for the Central District of California. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), as well as supplemental jurisdiction under 28 U.S.C. § 1367. Removal is proper for the following reasons:

## I.   PROCEEDINGS IN STATE COURT

1.   On July 18, 2018, Plaintiff Mahoo Amin (also known as Seyed M Fazlollahzade Divkola) ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of Orange, titled *Mahoo Amin v. Advanced Sterilization Products Services Inc.; Kelly Services, Inc.; and Does 1 through 25, inclusive*, Case No. 30-2018-01006131-CU-OE-CXC (the "Complaint"). In his Complaint, Plaintiff alleges eight causes of action on behalf of himself and a purported class of similarly situated individuals.

2.   On July 26, 2018, KSI's registered agent for service of process received, via personal service, copies of the Summons, Complaint, and Civil Case Cover Sheet. (Declaration of Kristen Yerkovich ("Yerkovich Decl.") ¶ 5.) A true and correct copy of the packet served on KSI is attached hereto as **Exhibit A to the Declaration of Kristen Yerkovich** ("Exhibit A"). (*Id*. ¶ 5.)

3.   On August 24, 2018, the other named Defendant in the case, Advanced Sterilization Products Services Inc. ("ASPS," with KSI and ASPS referred to collectively herein as "Defendants")[1] filed its Answer to Plaintiff's Complaint in Orange County

---

[1] ASPS has consented to and will be joining KSI's notice of removal.

48438097v.2

Superior Court.  A true and correct copy of the Answer that ASPS filed is attached hereto as **Exhibit B to Defendant Kelly Services, Inc.'s Notice of Removal of Civil Action to the United States District Court** ("Exhibit B").

4.      Exhibits A and B constitutes all process, pleadings, and orders served upon KSI in Orange County Superior Court.

## II.    TIMELINESS OF REMOVAL

5.      The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6.      The service of process which triggers the 30-day period to remove is governed by state law.  *See City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.      This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint on July 26, 2018, and within one (1) year of the commencement of this action.  28 U.S.C. §§ 1446(b), 1446(c)(1).  *See* Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served.  Service of a summons in this manner is deemed complete at the time of such delivery.").

2
DEFENDANT'S NOTICE OF REMOVAL

## III.   JURISDICTION BASED ON THE CLASS ACTION FAIRNESS ACT

8.      This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. § 1441(a), in that this Court has original jurisdiction over the action, because (1) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, (2) neither of the Defendants is a state, state official, or other governmental entity, (3) the number of putative class members is greater than 100, and (4) the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2), (d)(5) & (d)(6).

### A.      Plaintiff And Defendants Are Minimally Diverse

9.      CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A) (requiring that "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### 1.      Plaintiff Is A Citizen Of California

10.      For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state.").  Residence is *prima facie* evidence of domicile.  *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *See Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed.").

11.      Here, Plaintiff alleges that he resides in the State of California.  (*See* Ex. A, Compl. ¶ 1 ("Plaintiff Mahoo Amin . . . is an adult residing in the City of Irvine, in the

3

48438097v.2

County of Orange, California.").)  During the course of his employment, Plaintiff worked in Orange County, California.  (*See id.* ¶ 9 ("[T]he acts and omissions that give rise to Plaintiff's claims took place in Orange County, California, as Plaintiffs were employed by Defendants in Orange County, California."); Yerkovich Decl. ¶ 6.)  Based on KSI's records, throughout the period of his employment, Plaintiff was a resident of California. (Yerkovich Decl. ¶ 6.)  For instance, the mailing address reflected on Plaintiff's paystubs is in Rancho Santa Margarita, California, which is located in Orange County.  (*Id.* ¶ 6.) Additionally, when Plaintiff applied for employment with KSI, Plaintiff provided KSI with the same address as is reflected on his paystubs for his home address.  (*Id.* ¶ 6.)

12.   Therefore, KSI is informed and believes that Plaintiff is, and at all relevant times for the purposes of this removal, has been a citizen of the State of California.

13.   Plaintiff also seeks to represent in this lawsuit allegedly similarly situated employees who are or were employed by Defendants and who worked in the State of California.  (*See* Ex. A, Compl. ¶ 46.)

## 2.   Defendant KSI Is Not A Citizen Of California

14.   To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  In *Hertz Corp.*, the Supreme Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, . . . not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."  *Id.* at 1192, 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat"); *see also Ho v. Ikon Office Sols., Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (finding nerve center as location where corporation's headquarters

48438097v.2

were located, where the corporate officers worked, and from where corporate policies and procedures arose).

15. For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

16. At all times since Plaintiff commenced this lawsuit, KSI was and is a corporation formed under the laws of the State of Delaware. (Yerkovich Decl. ¶ 3.)

17. Additionally, at all times since Plaintiff commenced this lawsuit, KSI's principal place of business has been and is in Troy, Michigan. KSI's corporate headquarters are located in Troy, Michigan, and KSI's corporate executives, including its senior leadership team, have been and continue to be based in Troy, Michigan, have maintained and continue to maintain their offices in Troy, Michigan, and have performed and continue to perform their primary duties and job functions in Troy, Michigan. (*Id*. ¶ 4.)

18. Therefore, for purposes of diversity of citizenship, KSI has been at all relevant times a citizen of the States of Delaware and Michigan. It is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California, for purposes of CAFA.

19. Accordingly, CAFA's diversity requirement is satisfied because at least one class member, Plaintiff, and at least one named and served defendant, KSI, are citizens of different states.

### 3. Doe Defendants' Citizenship May Be Disregarded

20. The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."). Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C.

48438097v.2

§ 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to join in a removal petition); *see Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). Thus, the existence of Doe defendants one through twenty-five does not deprive this Court of jurisdiction.

**B. Defendants Are Not Governmental Entities**

21. Neither of the Defendants is a state, state official, or any other governmental entity.

**C. There Are More Than 100 Potential Class Members**

22. CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

23. Here, the proposed class in the Complaint is defined as "[a]ll non-exempt employees who are or were employed by Defendants and who worked in California at any time during the Class Period (collectively, the 'Class' or 'Class Members') excluding all persons with administrative or managerial duties only." (Ex. A, Compl. ¶ 46.)

24. The Complaint also alleges that "during the Class Period, hundreds of Class members have been employed by Defendants as non-exempt employees in the State of California." (*Id.* ¶ 47.)

25. Based on KSI's records, KSI employed approximately 495 non-exempt employees who worked at ASPS in the State of California from July 18, 2014, to July 18, 2018. (Yerkovich Decl. ¶ 8.)

26. Thus, there are at least 495 putative class members in the class alleged by Plaintiff, and the 100-putative class member requirement is easily satisfied.

**D. The Amount In Controversy Exceeds The Statutory Minimum**

27. CAFA requires that the amount in controversy exceed $5,000,000 exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

DEFENDANT'S NOTICE OF REMOVAL

48438097v.2

28.    "[T]he proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).  To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

29.    In determining the amount in controversy, the Court must consider the recovery sought, including penalties, as well as recoverable statutory attorney fees.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that claims for statutory attorney's fees should be included in amount in controversy, regardless of whether award is discretionary or mandatory).  The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy.").  The amount in controversy is determined at the time of removal and is to be decided based on the allegations in the operative pleading. *Medrano v. Genco Supply Chain Sols.*, 2011 WL 92016, *11 (E.D. Cal. 2011) (for purposes of removal a court "must deal with what has actually been pled").

30.    It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting time penalties).

DEFENDANT'S NOTICE OF REMOVAL

48438097v.2

31.     Whereas KSI denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000.  All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other information as identified herein), assuming without any admission, the truth of the allegations.  Likewise, these calculations are based on the proposed class alleged in the Complaint, and in no way indicate that class treatment is appropriate in this case, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  KSI expressly reserves the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.  However, for purposes of removal, KSI bases its calculations on the allegations, facts known to it, and class definition pled by Plaintiff.[2]

### 1.     Unpaid Overtime Claim

32.     Plaintiff alleges that "[f]or the four (4) years preceding the filing of this action, Defendants failed to compensate Plaintiff and members of the Class for all hours worked by not compensating them for work performed as discussed herein, including but not limited to the hours worked including all overtime hours[.]"  (Ex. A, Compl. ¶¶ 57, 65.)

33.     Plaintiff further alleges that, when he worked at the ASPS worksite in Irvine, California, he "was often required to work more than 8 hours per shift," but "Defendants did not permit Plaintiff to log all of his overtime hours worked"; "[w]hile working for Defendants at the Fontana[,] [California] worksite, Plaintiff would mostly work more than 8 hours in a shift, but was only paid for 8 hours of wages for that shift"; and "[a]t both the Irvine and Fontana worksites, Defendants would often refuse to allow Plaintiff to

---

[2] Although unless otherwise noted the following calculations cover the time period of July 18, 2014, to July 18, 2018, based on the allegations in Plaintiff's Complaint, KSI notes that the amount in controversy would be even higher if the calculations were to cover the time period of July 18, 2014, to the present.

DEFENDANT'S NOTICE OF REMOVAL

48438097v.2

1  log overtime hours when he worked more than 8 hours in a shift."  (*See id.* ¶¶ 19-21, 24,
2  26, 28-29.)

3       34.     As discussed further below, Plaintiff also alleges a cause of action for
4  missed meal and rest breaks in part on the grounds that he missed second meal breaks and
5  third rest breaks for shifts exceeding 10 hours.  (*Id.* ¶ 76.)

6       35.     Plaintiff further alleges that "Plaintiff and California non-exempt employees
7  worked more hours per day than Defendant credited them with having worked.
8  Defendants maintained a policy where Defendants' manager would not allow Plaintiff
9  and the Class, who were required to log their own hours, to log all of their hours worked,
10  including overtime and double-time hours worked, and did not pay them wages for that
11  time."  (*Id.* ¶ 67.)

12       36.     Plaintiff further alleges that "Defendants' policies and procedures were
13  applied to all non-exempt employees who were not paid wages during time they were
14  under control of Defendants in California and resulted in non-exempt employees working
15  time which was not compensated any wages in violation of Labor Code sections 1194,
16  1197, and the Wage Orders."  (*Id.* ¶ 70.)

17       37.     Given that Plaintiff alleges that Defendants maintained an unlawful policy
18  with respect to overtime that was applied to the entire putative class, the Complaint
19  contemplates a 100 percent violation rate.  (*Id.* ¶¶ 67, 70.)  Where a plaintiff alleges a
20  "uniform policy and systematic scheme of wage abuse," without including "any
21  modifying language to suggest less than uniform violations," courts have found that the
22  amount in controversy can be satisfied by assuming a 100% violation rate.  *Franke v.*
23  *Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017); *see Muniz*,
24  2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)
25  (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific
26  allegations that would result in a putative class or violation rate that is discernibly smaller
27  than 100%")); *see also Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal.

28
                                9
48438097v.2

Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy – such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation – when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."). Accordingly, a 100 percent violation rate with respect to the scope of the putative class affected can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's unpaid overtime wages claim.

38.     Plaintiff does not quantify precisely how many overtime hours per day or week he and the putative class members allegedly worked without compensation. However, Plaintiff alleges that these violations occurred regularly in asserting that he "often" and "mostly" worked more than 8 hours in a shift but that Defendants "often" refused to allow him to log his overtime hours. (Ex. A, Compl. ¶¶ 24, 28-29.) Moreover, Plaintiff seeks to sustain his meal and rest period class claim on the premise that he and the members of the putative class worked shifts exceeding 10 hours so as to qualify for second meal periods and third rest periods that they allegedly were denied. (*Id*. ¶¶ 76-77.)

39.     The average hourly rate of pay for KSI non-exempt employees who worked at ASPS in California between July 18, 2014, to July 18, 2018, is $20.84. (Yerkovich Decl. ¶ 9.) The average overtime hourly rate of pay, therefore, is $31.26 ($20.84 x 1.5). (*Id*. ¶ 9.) There are approximately 495 non-exempt KSI employees who worked at ASPS in California from July 18, 2014, to July 18, 2018, and they worked a total of approximately 23,891 workweeks during this period. (*Id*. ¶ 8.)

40.     Given Plaintiff's allegations regarding how frequently the violations occurred and assuming that 100 percent of the putative class were affected, assuming

DEFENDANT'S NOTICE OF REMOVAL

accordingly that putative class members worked 8 hours of overtime without compensation each workweek, the amount in controversy for Plaintiff's unpaid overtime claim is **$5,974,661.20** (8 hours per week x 23,891 total workweeks x $31.26).  KSI notes that, even cutting the assumed hours of unpaid overtime per workweek to 5 unpaid overtime hours each workweek, the amount in controversy for this claim would be $3,734,163.30.

### 2.   Meal And Rest Period Claims

41.   Plaintiff alleges that Defendants failed to provide meal and rest periods in accordance with California law.  (Ex. A, Compl. ¶¶ 75-81.)

42.   California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  California Labor Code Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."  California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods.

43.   Wage Order 16-2001 provides that "authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof."  California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not authorized and permitted to take mandated rest periods.

44.   Plaintiff alleges that "Defendants did not pay a premium of one hour's pay for any missed meal or rest periods, including second meal periods and third rest periods."  (Ex. A, Compl. ¶ 32.)

45.   Plaintiff further alleges that "Defendants failed to provide any policy or procedure for second meal breaks for shifts lasting longer than 10 hours, and as such,

48438097v.2

Plaintiff was not allowed to take his second meal breaks when his shifts were longer than 10 hours." (*Id.* ¶ 30.)

46.   Plaintiff further alleges that he "was never provided the opportunity to take third rest periods" for shifts exceeding 10 hours.  (*Id.* ¶ 31.)

47.   Plaintiff generally asserts that Defendants' alleged "unlawful conduct has been widespread . . . throughout its facilities in California."  (*Id.* ¶ 35.)

48.   Plaintiff does not specify the precise number of alleged meal and rest periods he claims to have been denied.  However, Plaintiff alleges that he missed meal and rest periods, including second meal periods and third rest periods in addition to the preceding periods, and that he never was allowed these subsequent meal and rest periods. Plaintiff claims that such alleged conduct, along with the rest of Defendants' allegedly unlawful conduct, was "widespread."  (*Id.* ¶¶ 30-32, 35.)

49.   As noted above, between July 18, 2014, to July 18, 2018, putative class members worked a total of approximately 23,891 workweeks and had an average hourly rate of $20.84.[3]  (Yerkovich Decl. ¶¶ 8-9.)

50.   Based on Plaintiff's allegations, assuming that putative class members were not authorized and permitted to take four meal periods and four rest periods each workweek, the amount in controversy for Plaintiff's meal and rest period claims is **$3,983,107.50** (23,891 workweeks x 8 violations per week x $20.84).  KSI notes that,

---

[3] The statute of limitations for recovery for meal or rest period premium pay under California Labor Code Section 226.7 is three years.  *See Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges a claim for meal and rest break premium pay as part of his unfair competition claim under Business and Professions Code Section 17200, *et seq.*  (Ex. A, Compl. ¶ 115.)  Although Defendants contend that meal and rest period premium pay cannot be recovered under Business and Professions Code Section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), Defendants apply a four-year statute of limitations for purposes of calculating the amount in controversy, as this is what the Complaint alleges.  Cal. Bus. & Prof. Code § 17208.

48438097v.2

even if the assumed missed meal and rest periods were cut in half to just two meal periods and two rest periods per workweek, the amount in controversy for this claim would be $1,991,553.70.

### 3. Wage Statement Claim

51.     Plaintiff asserts a cause of action for failing to provide accurate wage statements under California Labor Code Section 226.  (Ex. A, Compl. ¶¶ 88-92.) California Labor Code Section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under California Labor Code Section 226 is one year.  *Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).

52.     Plaintiff filed his Complaint on July 18, 2018.  Therefore, the statutory period for a claim under California Labor Code Section 226 begins on July 18, 2017.

53.     KSI non-exempt employees who work for ASPS in California are paid on a weekly basis.  (Yerkovich Decl. ¶ 11.)  Accordingly, there are 52 pay periods per year for these employees.  (*Id.* ¶ 11.)

54.     During the statute of limitations period for the wage statement claim, approximately 239 putative class members worked approximately 6,383 pay periods.  (*Id.* ¶ 10.)

55.     Assuming a wage statement penalty of $50 per employee for any initial violation, $100 per employee for each subsequent violation, and a $4,000 maximum for each employee, the amount in controversy for Plaintiff's wage statement claim is **$555,200**.  (*Id.* ¶ 10.)  This computation is based on the following penalty calculations for initial and subsequent violations:  (1) 239 initial alleged violations for 239 employees x $50 per violation = $11,950; and (2) 5,470 subsequent alleged violations for 239

48438097v.2

employees x $100 per violation = $547,000 ($11,950 + $547,000 = $558,950).[4]  The number of subsequent alleged violations for each employee was determined by taking the total number of pay periods for that employee during the relevant period, and subtracting 1 (to account for the initial alleged violation).  (*Id*. ¶ 10.)  However, for purposes of the above calculation, the wage statement penalties were capped at $4,000 for each employee.  (*Id*. ¶ 10.)  For example, if an employee had 55 wage statements during the relevant period, his or her estimated wage statement penalty would be $4,000, not $5,450 ([1 x $50] + [54 x $100]).

### 4.    Total Calculation

56.    Although KSI denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class, exclusive of attorneys' fees, is approximately **$10,512,968**, calculated as follows:

| $5,974,661.20 | Unpaid Overtime Claim |
|---|---|
| $3,983,107.50 | Meal And Rest Period Claims |
| $555,200.00 | Wage Statement Claim |
| $10,512,968.00 | **TOTAL (Without Fees and Penalties)** |

### 5.    Attorneys' Fees

57.    The figures above do not consider Plaintiff's claim for attorneys' fees.  (Ex. A, Compl. ¶¶ 74, 92, Prayer For Relief).

58.    Requests for attorneys' fees must also be considered in ascertaining the amount in controversy.  *Galt G/S*, 142 F.3d at 1156 (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary

---

[4] For any employee that has 41+ pay periods, for the 41st pay period they have already accumulated $3,950 in wage statement penalties, so they only receive $50 in penalties for this pay period, to stay within the $4,000 maximum.  (*Id*. ¶ 10.)

DEFENDANT'S NOTICE OF REMOVAL

48438097v.2

or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

59.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.,* 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.").

60.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for an attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"). Even under the conservative benchmark of 25 percent of the total recovery, attorneys' fees alone would be approximately **$2,628,242** in this case ($10,512,968 x 0.25).

61.    Therefore, the amount in controversy for the causes of action discussed above is **$13,141,210** ($10,512,968 + $2,628,242).

62.    Although Defendants deny Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

## IV.    SUPPLEMENTAL JURISDICTION OVER THE PAGA AND UCL CLAIMS

63.    This Court has supplemental jurisdiction over Plaintiff's asserted representative action for civil penalties under PAGA and claims under the UCL. (Ex. A, Compl. ¶¶ 101-124.) Indeed, Plaintiff's claims asserted in his seventh and eighth causes

15

48438097v.2

of action, respectively, arise from the same case or controversy because they are based on the same "nucleus of operative facts." *See Kohler v. Inter Tel Techs.*, 244 F.3d 1167, 1170 (9th Cir. 2001) (finding supplemental jurisdiction proper because claims stemmed from same factual circumstances); *Carey v. S.J. Louis Construction*, 2010 WL 3853348, at \*4-5 (E.D. Cal. 2010) (denying motion to remand because one plaintiff demonstrated the required amount in controversy and the others alleged the same Labor Code violations such that their allegations were part of the same case or controversy).  Thus, the Court has proper jurisdiction over this case pursuant to 28 U.S.C. § 1367.

## V.   VENUE

64.   Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  As discussed above, Plaintiff is a resident of California.  Plaintiff originally brought this action in the Superior Court of the State of California, County of Orange, which is located within the Central District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## VI.   NOTICE TO STATE COURT AND TO PLAINTIFF OF REMOVAL

65.   Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and his counsel, and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Orange.

## VII.   PRAYER FOR REMOVAL

WHEREFORE, KSI prays that this civil action be removed from the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California.

DEFENDANT'S NOTICE OF REMOVAL

48438097v.2

1    DATED: August 27, 2018          Respectfully submitted,

2                            SEYFARTH SHAW LLP

3

4                       By: _/s/ *Daniel C. Whang*_____

                            Gerald L. Maatman, Jr.

5                             Jennifer A. Riley

                            Daniel C. Whang

6                             Michael D. Jacobsen

                   Attorneys for Defendant

7                    KELLY SERVICES, INC.

17

DEFENDANT'S NOTICE OF REMOVAL

48438097v.2